IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MICHAEL MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-2408-JPO |
| | ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE, | ) | |
| COUNTY/KANSAS CITY, KANSAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This case arises from a January 4, 2011 sting operation in which the Kansas City, Kansas Police Department ("KCKPD") sought to determine whether police officers on its tactical squad (the "SCORE unit") were engaging in theft during the execution of search warrants. Plaintiff Michael Mills, a member of the SCORE unit at the time, was arrested immediately following the sting operation. He brings federal civil-rights claims and state common-law claims for assault, battery, unlawful arrest and detention, and failure to train and supervise. A jury trial is scheduled to begin October 24, 2016.

Currently before the court is plaintiff's motion to allow Dennis Waller to testify as an expert at trial regarding generally accepted police practices and procedures (ECF doc. 233). Defendants oppose the motion, arguing that it is an untimely attempt to seek reconsideration of a previous order excluding Waller's expert testimony. Defendants assert, however, that if the court permits Waller's testimony, then "defendants must be entitled to offer the

testimony and expert report of their police policies expert, [Timothy J.] Longo,"[1] whose expert testimony the court also excluded in a previous order.

The court held a hearing on this matter on October 3, 2016, and the parties were permitted to supplement their briefs with oral arguments. The court informed the parties that it was persuaded to grant plaintiff's motion (in part) and re-examine the admissibility of law-enforcement expert testimony, but that under the applicable legal standards it was inclined to admit more opinions expressed by Longo than by Waller, on account of the fact that many of Waller's stated opinions went far beyond generally accepted police practices and procedures. The court gave plaintiff an opportunity to withdraw his motion based on this information. Plaintiff informed the court the next day that he wished to pursue the motion. For the reasons discussed on the record at the hearing and set out in detail below, plaintiff's motion is granted in part and denied in part. The court will admit expert opinion testimony from Waller and Longo, though not to the extent set out in each one's expert report.

## I.    Procedural History

This is one of seven related cases brought by members of the KCKPD SCORE unit following the sting operation.[2] The cases were consolidated for discovery purposes.

---

[1]ECF doc. 239 at 7 n.7.

[2]Indeed, it is the last unresolved case after three of the cases resulted in defense verdicts at trial and three of the cases were dismissed when the parties reached settlements.

Plaintiffs[3] jointly retained Waller as an expert in the field of police practice and training.  In

a report dated June 3, 2013, Waller stated eleven opinions related to the planning and

execution of the sting operation, and defendants' actions in arresting and detaining plaintiffs

in the hours that followed.[4]   Thereafter, defendants filed a motion in limine in each case,

asking the court to exclude at trial Waller's report and testimony under Fed. R. Evid. 702 and

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[5]   The presiding judge

at the time, U.S. District Judge Kathryn H. Vratil, sustained the motion in a text-entry order

on October 2, 2014, reasoning as follows:

> Dennis Waller succinctly describes his methodology as follows: (1) developing
> an understanding of the facts; (2) analyzing the actions of the officers; (3)
> comparing the actions of the officers with standards of training and practices
> (including law, policies and procedures); and (4) explaining how what the
> officers did is consistent or inconsistent with such standards of training and
> practice.  A jury, apprised of the evidence and instructed with regard to the
> law, is more than capable of deciding the issues in this case without that kind
> of assistance from Mr. Waller.   Indeed, it is not clear how his so-called
> methodology is different from what juries do in every case. Mr. Waller's
> opinion is nothing more than one person's idea about what verdict the jury
> should reach.  As noted, his "methodology" is one which the jury will perform
> -- and is fully capable of performing.  Testimony from Mr. Waller will prolong
> the trial and incur needless expense.  Moreover, because Mr. Waller's opinions
> lack relevance, the high potential for prejudice requires that they be excluded

---

[3]Use of the plural "plaintiffs" in this opinion refers to all the SCORE officers who
brought the seven related suits (including Mills); use of the singular "plaintiff" refers only
to Mills.

[4]Waller's report is filed in *Gambrill v. Unified Gov't of Wyandotte Cty/Kan. City,
Kan.*, Case No. 11-2699, ECF doc. 133-5 (hereinafter, "Waller Report").

[5]The briefing related to defendants' motion in limine is filed in *Gambrill*, Case No.
11-2699, ECF docs. 132, 133, 151, and 156.

under Rule 403, Fed. R. Evid.[6]

Because Judge Vratil concluded that Waller's proposed expert testimony presented no specialized knowledge that would help the jury reach its determination in this case, she did not go on to perform a full Rule 702/*Daubert* analysis.

Like plaintiffs, defendants retained an expert in the field of police practices and law enforcement.  In a report dated July 15, 2013, Longo stated eleven opinions related to the planning and execution of the sting operation, and defendants' actions in detaining, searching, and interviewing plaintiffs in the hours that followed.[7]  Plaintiffs then filed their own motion in limine, asking the court to exclude Longo's report and testimony at trial under Rule 702 and *Daubert*.[8]  Judge Vratil sustained plaintiffs' motion, again in a text entry, reasoning as follows:

> This motion is sustained for substantially the reasons stated therein, and in Plaintiffs' Reply. . . . Furthermore, the expert report of Timothy Longo suffers the same deficiencies as that of plaintiffs' expert Dennis Waller, which the Court excluded today.[9]

---

[6]ECF doc. 171.  Judge Vratil had entered the same ruling earlier in a related case, *Callahan v. Unified Gov't of Wyandotte Cty/Kan. City, Kan.*, 11-2621, ECF doc. 448, and entered it in this case after plaintiffs did not respond to her order to show cause why it should not be applied herein.

[7]Longo's report is filed in *Gambrill*, Case No. 11-2699, ECF doc. 136-1 (hereinafter, "Longo Report").

[8]The briefing related to plaintiffs' motion in limine is filed in *Gambrill*, Case No. 11-2699, ECF docs. 136, 152, and 155.

[9]Case No. 11-2699, ECF doc. 161.

In the instant motion, plaintiff asks the court to revisit the question of whether Waller should be permitted to provide expert testimony at trial.  Defendants state that they "agree with" Judge Vratil's rulings excluding all expert testimony "on the law of arrest and detention," but that if the court grants plaintiff's motion and permits Waller to testify, they should be permitted to offer Longo's testimony or expert report.[10]

## II.     Modifying Limine Rulings

The court must begin its analysis by considering whether plaintiff's motion is procedurally proper or whether, as defendants argue, it is a disguised motion for reconsideration that comes too late.

Defendants assert "[p]laintiff's present motion is an untimely motion to reconsider" Judge Vratil's October 2, 2014 order sustaining defendants' motion to exclude Waller's report and testimony.[11]  Defendants correctly note that under D. Kan. Rule 7.3, motions to reconsider non-dispositive orders must be filed within fourteen days after the order is filed. Thus, if plaintiff's motion is construed as a motion for reconsideration under Rule 7.3, it comes nearly two years too late.

The court is unconvinced, however, that motions asking the court to revisit early evidentiary limine rulings, especially when a case takes a path that was unanticipated at the time of the rulings, fall under Rule 7.3.  The Supreme Court has recognized that limine

---

[10]ECF doc. 239 at 7 n.7.

[11]*Id.* at 7.

rulings are "preliminary"[12] and "not binding,"[13] such that "the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."[14] "Rulings on motions in limine are by definition preliminary and are subject to change as the case unfolds."[15] Thus, a court may "reconsider" its limine ruling and change its determination of "what particular evidence ultimately [to] admit[] at trial."[16] Stated another way, a "judge may always change his mind" about evidentiary rulings made pretrial.[17] This result is mandated by "the district court's inherent authority to manage the course of trials."[18] Were the court to accept defendants' argument that Rule 7.3 prohibits plaintiff from asking the court to alter a previous limine ruling on the admissibility of evidence at trial, the court would be required to read Rule 7.3 in a manner that conflicts with Supreme Court precedent. The court may not

---

[12]*Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[13]*Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

[14]*Luce*, 469 U.S. at 41–42.

[15]*Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1359 (Fed. Cir. 2003) (discussing damages evidence).

[16]*Id.*

[17]*Ohler*, 529 U.S. at 758 n.3.

[18]*Luce*, 469 U.S. at 41 n.4. *See also United States v. Fonseca*, 744 F.3d 674, 683 (10th Cir. 2014) (quoting Fed. R. Evid. 103 Advisory Committee Notes (2000) for the rule that "nothing . . . prohibits the court from revisiting its [in limine] decision when the evidence is to be offered").

read the local rule in that manner.[19]

Next, defendants seem to argue, without support, that pretrial rulings excluding expert testimony under Rule 702 or *Daubert* are not deemed to be "in limine rulings" subject to the Supreme Court's rulings in *Luce* and *Ohler*.[20]   The court disagrees with this untenable position.  First, although *Luce* addressed a ruling admitting impeachment evidence, rather than expert testimony, the Supreme Court specifically stated that it used the term "in limine" in its opinion "in a broad sense to refer to *any* motion, whether made before or during trial, *to exclude anticipated prejudicial evidence* before the evidence is actually offered."[21] Second, the Tenth Circuit has repeatedly characterized pretrial motions seeking to exclude expert testimony as "motions in limine."[22]   Third, Judge Vratil's order itself stated that it was

---

[19]*See Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1163 n.1 (10th Cir. 2014); *United States v. Vogl*, 374 F.3d 976, 985 (10th Cir. 2004).

[20]ECF doc. 239 at 10.

[21]*Luce*, 469 U.S. at 40 n.2 (emphasis added).

[22]*See, e.g.,United States v. Roach,* 582 F.3d 1192, 1199 (10th Cir. 2009) ("Roach filed a motion in limine seeking to prevent the government from presenting a WPD [Wichita Police Department] detective, Jason Miller, as an expert witness on gang activity and asking the court to rule on Miller's expert credentials under *Daubert*, 509 U.S. 579, 113 S.Ct. 2786.");  *Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1087 (10th Cir. 2001) ("Recognizing that the law traditionally does not reward ambush trial tactics, in *Macsenti* this Court correctly criticized the practice of filing *Daubert* motions at a late stage in the adversarial process when there has been no motion in limine or concurrent objection to an expert's participation.");  *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000) ("The district court may also satisfy its [*Daubert*] gatekeeper role when asked to rule on a motion in limine. . . .").  *See also United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999) ("*Daubert* challenges, like other preliminary questions of admissibility, are governed by Fed. R. Evid. 104.").

sustaining a "*Motion in Limine*" to exclude Waller's expert testimony.[23]  Simply put, courts use the term "in limine" in referencing rulings made pretrial on the admissibility of evidence—be it expert testimony or otherwise.  Thus, the Supreme Court's determination that limine rulings are preliminary rulings subject to modification at the court's discretion applies to Judge Vratil's orders excluding expert testimony.

Defendants note that in *Farmland Mut. Ins. Co. v. AGCO Corp.*, the undersigned denied a motion to exclude expert testimony, stating, "assuming for the sake of discussion" that an earlier *Daubert* ruling permitting the testimony was in error, the movant "failed to file a timely motion for reconsideration" under Rule 7.3.[24]  The court also stated that the movant gave "no reason, let alone a persuasive one to question [the] prior ruling."[25]  The court concluded that it was "unpersuaded that defendant is entitled to a second bite at the apple."[26]  To the extent *Farmland* can be read to hold that a court *cannot* revisit a *Daubert* limine ruling if a timely motion for reconsideration is not filed, the court now declines to follow that reasoning based on the Supreme Court's discussions in *Luce* and *Ohler*.  Unlike in this case, the movant in *Farmland* did not assert that *Daubert* rulings are preliminary and subject to being revisited, nor did it draw the court's attention to the discussion of the matter in *Luce*

---

[23]ECF doc. 171 (emphasis added).

[24]No. 07-2004, 2008 WL 763215, at *4 (D. Kan. March 21, 2008).

[25]*Id.*

[26]*Id.*

or *Ohler*.[27]

Having determined that Judge Vratil's preliminary limine rulings *can* be reconsidered, the court proceeds to determine whether the rulings *should* be reconsidered.  As distinguished from *Farmland*, plaintiff here does present a persuasive reason to re-examine the issue of expert testimony.  Plaintiff correctly asserts that the way in which the evidence came in during the trials of three other SCORE officers calls for a re-examination of whether Waller's proposed testimony on police practice and procedure presents specialized knowledge that would help the jury reach its determination in this case.[28]  The undersigned presided over the trial in the related case of *Hammons v. Unified Government of Wyandotte County/Kansas City, Kansas*,[29] and listened to the majority of the testimony in the other related cases of *Callahan* and *Gambrill,* over which Judge Vratil presided.  During these trials, it became clear from the testimony of nearly every police officer who took the witness stand that there are generally accepted police procedures about which police officers receive specialized, continual training.  These procedures and training are beyond the common knowledge of the average layperson.  Indeed, in defendants' motion for judgment as a matter

[27]*See Farmland*, Case No. 07-2004, ECF docs. 82, 83, and 87 (briefs on motion in limine to preclude expert testimony).

[28]For this reason, the court also discounts defendants' concern that the April 4, 2016 Amended Pretrial Order recognized that "[t]he parties do not anticipate filing any additional motions to challenge the propriety of or otherwise exclude expert testimony."  ECF doc. 210 at 48.  Plaintiff could not have known the basis of his present request prior to the start of the trials in the related cases, the first one beginning May 23, 2016.

[29]Case. No. 12-2028.

of law filed at the close of testimony in *Hammons*, defendants themselves asserted,

> Plaintiff has presented no evidence that the training provided to defendants'
> police officers was inadequate or that its officers were not sufficiently trained
> on the subjects of arrests and detentions. Specifically, *plaintiff failed to present*
> *testimony of what constitutes adequate training and inadequate training in*
> *regard to arrests and detentions.*[30]

Similarly, defendants asserted,

> [P]laintiff has presented no evidence the supervision provided to defendant's
> police officers was inadequate, its officers were not sufficiently supervised in
> effectuating arrests and detentions, or the Unified Government possessed any
> knowledge of such alleged deficiency. Moreover, *plaintiff failed to offer any*
> *evidence of what constituted adequate supervision of defendant's officers in*
> *effectuating arrests and detentions.*[31]

If knowledge of what constitutes adequate law-enforcement training and supervision were

within the purview of the average juror, defendants would not have declared the necessity

of evidence on the subject.[32]

Defendants nonetheless argue that Judge Vratil's rulings excluding the police-

procedures experts should not be disturbed because doing so would cause defendants "undue

prejudice and expense."[33]  However, defendants give absolutely no indication of how they

would suffer prejudice or additional expense.  Plaintiff brought this motion more than a

month before trial, giving the parties and the court adequate time to fully evaluate the

---

[30]Case No. 12-2028, ECF doc. 222 at 6 (emphasis added).

[31]*Id.* at 10 (emphasis added).

[32]*See also* discussion in *Daubert* analysis at *infra* 16–17.

[33]ECF doc. 239 at 10.

evidentiary issues.  This is not an instance of "sandbagging" or "ambush trial tactics" such as those described in the *Alfred v. Caterpillar, Inc*. case defendants cite.[34]   Defendants have fully deposed Waller and have the 300-page transcript of that deposition, in addition to his report.  Defendants have retained their own expert witness, who has offered opinions on the same topics addressed in Waller's proposed testimony.  There is nothing in the record that leads the court to conclude defendants would be prejudiced if the court grants plaintiff's motion.

After considering all the circumstances, the court concludes that taking a second look at the parties' proposed expert-witness testimony on police practices and training is warranted.

### III.    Legal Standards for the Admissibility of Expert Testimony

Rule 702 governs the admissibility of expert testimony:[35]

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

---

[34]262 F.3d 1083, 1087 (10th Cir. 2001).

[35]*Hoffman v. Ford Motor Co.*, 493 F. App'x 962, 972 (10th Cir. 2012) (citing *United States v. Call*, 129 F.3d 1402, 1404 (10th Cir. 1997)).

(d) the expert has reliably applied the principles and methods to the facts of the case.

From this rule, the Tenth Circuit has developed a two-part, gatekeeping test for trial courts to apply in considering whether proposed expert testimony is admissible.  First, the court must decide "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[36]  Second, the court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact.'"[37]

To meet the qualification prong, a potential expert witness must possess "such skill, experience or knowledge in [a] particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in [its] search for truth."[38]  If an expert is sufficiently qualified, then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."[39]  "To be reliable, the opinions must be within the witness' area of expertise, be based on facts and data reasonably relied on by experts in the field (Rule 104(a)) and not be speculative or mere

---

[36]*Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702)).

[37]*Id.* (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)).

[38]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (internal quotation and citation omitted).

[39]*United States v. Avitiz–Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012).

guesswork."[40]  Finally, "[a]n expert's testimony must also be relevant—it must assist the fact-finder in understanding the evidence or determining a fact in issue."[41]

"The proponent of expert testimony bears the burden of showing that the testimony is admissible."[42]  Although the court has broad discretion in deciding whether to admit or exclude expert testimony,[43] the court is mindful that exclusion of expert testimony should be "the exception, not the rule."[44]

## IV.   Analysis

As noted above, defendants have requested that their designated expert on police policies and training, Longo, be permitted to testify if the court grants the instant motion and permits Waller to testify.  Thus, the court will apply the Rule 702 and *Daubert* admissibility standards to the proposed testimony of both experts.  In so doing, the court considers the parties' arguments in the briefs accompanying their earlier-filed motions in limine on this

---

[40]*Richard v. Hinshaw*, No. 09-1278-MLB, 2013 WL 6632122, at *2 (D. Kan. Dec. 17, 2013).

[41]*Hoffman*, 493 F. App'x at 975 (citing *Daubert,* 509 U.S. at 591).

[42]*Conroy*, 707 F.3d at 1168 (citing *Nacchio*, 555 F.3d at 1241).

[43]*Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1498 (10th Cir. 1996) (quoting *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992)).

[44]*United States v. Reulet*, No. 14-40005-DDC, 2015 WL 7078917, at *2 (D. Kan. Nov. 13, 2015) (quoting Rule 702 Advisory Committee Notes (2000) (noting that "a review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.")).

topic.[45]  Significantly, those briefs indicate that the parties share the view that expert opinions on whether defendant officers acted in accordance with generally accepted police principles *should* be admitted at trial.[46]  The parties' disagreement comes over the particular opinions stated by each expert.

### Prong One: Qualified Expert

As set forth above, under the qualification prong of the expert admissibility test, the court must consider whether an expert possesses "skill, experience or knowledge . . . to make it appear that his opinion would rest on substantial foundation."[47]  Neither side really questions the qualifications of the other's retained expert, and the court finds each qualified to offer opinions on the topics of police training, practice, and procedure.

Waller has attached a curriculum vitae to his report which indicates his training and experience in the law-enforcement field.[48]  Waller has a bachelor's degree in police administration and a master's degree in public administration, and has participated in more than 3,400 hours of training in the law-enforcement field.  He is a retired police officer and

---

[45]The earlier briefs were filed in *Gambrill*, Case No. 11-2699.  The briefing related to defendants' motion in limine to exclude Waller's testimony is found in ECF docs. 132, 133, 151, and 156.  The briefing related to plaintiffs' motion in limine to exclude Longo's testimony is found in ECF docs. 136, 152, and 155.  Any reference herein to these ECF document numbers is a reference to the docket in *Gambrill*.

[46]*See, e.g.,* ECF docs. 152 at 2, 151 at 15.

[47]*LifeWise Master Funding*, 374 F.3d at 928.

[48]Waller Report at 25–27.

14

police chief, and was formerly the Director of Law Enforcement Training at Wake Technical College in Raleigh, North Carolina.  He has been certified as a police instructor by four states.  Since 1988, he has made his career as a police-practices consultant and expert witness, and has been hired in this capacity in more than 600 cases.  Although defendants note that Waller's testimony has been excluded in some cases,[49] as far as the court can tell, such exclusion was not based on Waller's qualifications, but instead on case-specific findings going to the relevance of Waller's opinions (such as findings that the opinions reached impermissible legal conclusions or would not be helpful to the jury).  Defendants' argument that Waller's report in this case suffers from similar flaws will be addressed below under the second prong of the gatekeeping analysis.  Defendants also state that Waller should not be considered an expert on police practice because "he does not appear to have a basic understanding of probable cause."[50]  But defendants provide no citation to the record that would indicate Waller's understanding of this concept.  Particularly given that the court will instruct the jury on the probable cause standard, the court will not exclude Waller's testimony on this unsupported basis.

Longo's report states that he is the current Chief of Police for the City of Charlottesville, Virginia.  Before taking this position, he served more than eighteen years as a member of the Baltimore City Police Department, including as a district commander.  He

---

[49]ECF doc. 133 at 3–5.

[50]*Id.* at 8.

has a   bachelor's degree and a law degree.   He has provided instruction in police administration and has performed audits of police departments' protocols regarding the use of force.   He has served as a private consultant on law-enforcement issues since 2000.

Given the law-enforcement backgrounds of Waller and Longo, the court has no trouble finding each qualified to serve as an expert witness on police training, practices, and procedure.[51]

### **Prong 2: Reliable and Relevant Opinions**

Finding Waller and Longo qualified, the court now must determine whether each one's "proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact.'"[52] Applying this prong, the court concludes that some of the proposed testimony would be helpful, and some of it would not.

To begin, the court notes that neither side disputes that the proposed testimony is "based on sufficient facts or data."[53]   The parties conceded at the October 3, 2016 hearing that they could not recall any significant difference in the background information (deposition transcripts, pleadings, etc.) that each expert was asked to review as a foundation for his report.

---

[51]*See Ortega v. City & Cty. of Denver*, Nos. 11-2394-WJM-CBS, 11-2395, 11-2396, 11-2397, 2013 WL 438579, at *1 (D. Colo. Feb. 5, 2013) (witness involved in law enforcement for fifty years, including twenty-five years as a police chief, deemed qualified to serve as an expert witness on police procedure).

[52]*Conroy*, 707 F.3d at 1168 (quoting *Rodriguez-Felix*, 450 F.3d at 1117).

[53]Rule 702(b).

The parties also agree in their underlying *Daubert* briefs that, as a general premise, expert opinions on whether defendant officers  acted in accordance with generally accepted police principles would assist the trier of fact.  Under Tenth Circuit precedent, experts may offer opinions on police procedures and whether the conduct at issue was appropriate based on the expert's "understanding of generally accepted police custom and practice."[54]  But while such opinions are deemed helpful to jurors, an expert "'should avoid legal conclusions, which usurp[ ] the jury's role.'"[55]  "[E]xperts should refrain from stating their opinions about legal standards or legal conclusions drawn by applying law to the facts."[56]  "When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination."[57]  Although "[t]he

---

[54]*Zuchel v. City & Cnty. of Denver*, 997 F.2d. 730, 742–43 (10th Cir. 1993); *see also Ornelas v. Lovewell*, No. 11-2261-JAR, 2013 WL 3271016, at *6 (D. Kan. June 27, 2013), aff'd, 613 F. App'x 718 (10th Cir. 2015) (admitting expert testimony on "whether the conduct at issue fell below accepted standards in the field of law enforcement" (quoting *Zuchel*, 997 F.2d. at 742)); *Richard v. Hinshaw*, No. 09-1278-MLB, 2013 WL 6632122, at *4 (D. Kan. Dec. 17, 2013) (ruling, "the Tenth Circuit has long recognized that experts may offer opinions whether an officer's conduct fell below accepted standards in the field of law enforcement," and admitting expert testimony about "accepted standards" pertaining to jail guards and "whether policies and procedures at the Sedgwick County Jail comply with applicable national standards").

[55]*Reulet*, 2015 WL 7776876, at *6 (quoting *United States v. Bates*, No. 1:11-cr-00123-BLW, 2012 WL 1579590, at *1 (D. Idaho May 4, 2012)); *see also Ornelas*, 2013 WL 3271016, at *6 (ruling "an expert witness's testimony may not usurp the jury's fact-finding function").

[56]*Reulet*, 2015 WL 7776876, at *6.

[57]*Id.* (quoting *Bates*, 2012 WL 1579590, at *1).

line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear . . . it is well-settled that 'an opinion is not objectionable just because it embraces an ultimate issue.'"[58]  Thus, in *Ornelas*, a case upon which both sides rely, the court admitted expert testimony about whether the defendant's conduct "was in compliance with well-established police standards,"[59] but excluded "testimony as to the ultimate issue in this case."[60]

In their expert reports, Waller and Longo attempt to walk the fine line between opining on whether the defendant officers complied with accepted police practices, many of which are based on caselaw, and reaching legal conclusions that are at issue in this case. Where the experts succeed in this endeavor and only opine on the former, the court admits their testimony.[61]  Where the experts cross the line and opine on an ultimate legal conclusion,

---

[58]*Ornelas*, 2013 WL 3271016, at *6 (quoting *Ortega*, 2013 WL 438579, at *3, which in turn quoted Fed. R. Evid 704).  *See also Zuchel*, 997 F.2d at 742–43 (holding that expert testimony on whether an officer's conduct was "inappropriate" based on generally accepted police custom and practice was admissible, but noting that testimony about whether the conduct was "unconstitutional" would not have been permissible).

[59]*Ornelas*, 2013 WL 3271016, at *6.

[60]*Id.* at *7.  *See also Ortega*, 2013 WL 438579, at * 3 ("The Court acknowledges that there will likely be significant overlap between the legal authorities that form the basis for Montgomery's opinions and the Court's final jury instructions.  However, the Court sees a distinction between Montgomery testifying about whether the degree of force used was 'reasonable' (which the Court will not permit) and whether the degree of force used was in compliance with well-established modern police standards (which is permissible).").

[61]This holding presumes, of course, that an opinion an expert attempts to present at trial is an opinion actually stated in the expert's report.  The parties made some reference at the October 3, 2016 hearing that the experts had expanded upon their written opinions during

such as whether the Constitution or a particular legal case was violated or followed, or whether defendants are liable or not liable under a legal theory, the court excludes their testimony.

The court will require the testifying expert to tie every opinion about whether generally accepted procedures and standards were followed or disregarded to one or more procedures or standards. This means that opinions in the reports that appear to express only an expert's personal opinion, without reference to generally acceptable procedures, will not be permitted. The court can find no support, however, for defendants' seeming assertion at the October 3, 2016 hearing that experts must point to a specific *written* policy or procedure that defendants' officers allegedly violated or complied with in order for the expert's opinion to be deemed reliable. Rather, caselaw indicates experts may discuss generally acceptable standards in the law-enforcement community which are known to them solely by their years of experience and training.[62]  On cross-examination, though, counsel will be given

---

their depositions. Regardless of what might have been said during a deposition, the court ruled that each expert would be limited to opinions expressed within the four corners of his report. Moreover, it should go without saying that the expert's testimony must be otherwise admissible. For example, the court will not permit testimony that is not relevant to a fact at issue in the case, nor testimony that is cumulative. *See* Fed. R. Evid. 401, Fed. R. Evid. 403.

[62]*See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]he relevant reliability concerns may focus upon personal knowledge or experience."); *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) ("[W]e do not believe that *Daubert* and its progeny (including the 2000 amendment to Rule 702) provide any ground for us to depart from our pre-*Daubert* precedents recognizing that police officers can acquire specialized knowledge of criminal practices and thus the expertise to opine on such matters as the use of firearms in the drug trade."); *Brown v. Gray*, 227 F.3d 1278, 1287 (10th Cir. 2000) (citing with approval the admission of testimony by "an expert witness with an extensive

considerable leeway if they wish to show the jury that the expert is unable to point to a written procedure that supports a particular opinion.

Finally, the court will not allow the experts to testify that defendants did or did not have "probable cause" to arrest plaintiff.  Although the court does not doubt that police officers across the country are trained on the legal definition of "probable cause," and that court cases defining this term are the basis for generally accepted police standards that have developed, opining that a defendant "did not have probable cause," for example, goes to an ultimate issue in this case.  Such an opinion is distinguishable from one stating that a defendant did not follow generally accepted police practices.  The court will instruct the jury on the probable cause standard, and it will be the jury's role to apply that standard to defendants' conduct.

A few specific examples from the experts' reports might help the parties adhere to the above rulings during trial:

1.      Waller states the following in the first part of his Opinion A: "An inadequate and fundamentally flawed plan was developed to arrest SCORE officers who may, or may not be, involved in theft during the integrity test.  The plan did not take into account the

---

background in police policies, procedures, and training practices," about whether the city provided adequate training); *Ortega*, 2013 WL 438579, at *2 (holding that police-practices expert need not point to standards on which his opinions were based other than his 50 years of experience as a law-enforcement officer).  *See also United States v. Markum*, 4 F.3d 891, 896 (10th Cir. 1993) (permitting firefighter's opinion testimony based on observations from his years of training and experience).

requirement for establishing probable cause prior to an arrest or the protection of innocent officers."[63]  The court excludes this opinion.  Waller does not state that this opinion is based on generally accepted police practices.[64]

       2.       In the second part of his Opinion A, Waller states:

> At the time Chief Armstrong advised the ten officers of the SCORE Unit that they were "all" under arrest: Captain Lawson had only developed probable cause for the arrest of Officer Forrest.  It should be noted that the accepted procedure in law enforcement is to conduct the investigation, determine probable cause, then make the arrest.  Arresting persons, detaining them for lengthy periods of time, and then attempting to develop probable cause is not an accepted practice among professional and ethical law enforcement personnel.  Such a practice actually encourages a tendency for investigators to only look for evidence which supports their hypothesis [i.e. the arrested party committed the crime] and disregard other evidence which may be relevant to determining the truth about what happened.[65]

The court excludes this opinion to the extent that it reaches a legal conclusion about whether Armstrong had probable cause to arrest plaintiff or any other officer.  As noted, the court will instruct the jury on the probable-cause legal standard, and the jury will apply the standard to the facts.  However, the remainder of this opinion is admissible as setting out generally accepted arrest procedures in law enforcement.

---

[63]Waller Report at 8.

[64]The court flatly rejects plaintiff's unsupported suggestion during the October 3, 2016 hearing that *all* of Waller's eleven specific opinions (with subparts) must be deemed premised on generally accepted police policies and practices simply because Waller made the general statement in his report that he developed the opinions "[b]ased on the totality of [his] training, education, and experience in law enforcement; as a trainer; as an educator; and as a consultant."  *Id.*

[65]*Id.*

3.    In his Opinion C.2, Waller opines that in making plaintiff's arrest, the command staff's "reckless and inappropriate handling of firearms . . . indicated a distinct failure to properly train and appropriately supervise numerous command personnel with regard to standard firearms safety protocols required by KCKPD training, KCKPD directives, and sound law enforcement practice."[66]   First, the court will not permit Waller to use pejorative words like "reckless" to characterize, illustrate, or emphasize his opinions.  He and Longo will not be permitted to use such words at trial because they will not help the jury and will prompt objections, which will waste time.[67]   Second, before being allowed to express this opinion at trial, the court will require Waller to explain *what* law-enforcement practices were not followed; in other words, to explain what accepted practices require as to firearms safety in this situation.   Waller may then opine whether these standard practices were followed based on his understanding of the facts.   To the extent defendants contend that Waller's understanding of the facts is erroneous (because, for example, Waller incorrectly believes that active pointing of firearms occurred), it is proper for defendants to address this on their cross-examination of Waller, but it is not a reason to exclude Waller's testimony.[68]

---

[66]*Id.* at 12.

[67]To the extent they are appropriate, such pejoratives are reserved for counsel's arguments.

[68]*Reulet*, 2015 WL 7078917, at *2 ("While *Daubert* requires the Court to act as a gatekeeper for the admission of expert testimony, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' remain 'the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596)); *Richard*, 2013 WL 6632122, at *2 ("The court will not permit any witness,

Finally, Waller may testify about his understanding of the training that was provided to the defendant officers.[69]

4.      Longo states at Paragraph 272 of his report, "With regard to the level of force used to accomplish the detention, I am of the opinion that taking steps to immediately disarm the officers and secure them was safe, prudent, and consistent with generally accepted policing practices."[70]   This opinion is admissible.   Contained within it is Longo's view of *what* the generally accepted police standard is for detaining a suspect (i.e., that officers take steps to immediately disarm and secure a suspect), as well as Longo's opinion on whether the defendants followed this standard.

5.      In Paragraph 279 of Longo's report, he states that the interviews of SCORE unit members on the night of the sting, "were taken consistent with generally accepted policing practices."[71]   Before admitting this opinion at trial, the court will require Longo to explain *what* generally accepted policing practices are when it comes to police officer

---

expert or otherwise, to opine, directly or indirectly, on the credibility of witnesses but that does not mean that the expert cannot base his or her opinion on some facts while discounting or rejecting others.   Neither *Daubert*, nor the rules of evidence have eliminated the importance of cross-examination as the principal method of testing the opinions of an expert witness.").

[69]*See Ornelas*, 2013 WL 3271016, at *7 (admitting expert testimony "about police standards and procedures, including . . . how Kansas Highway Patrol ("KHP") Officers are trained with respect to use of force").

[70]Longo Report at 53.

[71]*Id.* at 54.

interviews, rather than simply making the conclusory statement that defendants complied with such practices.

In summary, the court admits Waller and Longo's opinions to the extent they (1) are directly expressed in the expert's report, and (2) explain generally accepted police practices and procedures without evading the province of either the court or the jury.  Although the court believes it neither necessary nor appropriate in this order to go through the experts' reports line-by-line and address each and every opinion, the legal standards stated herein will be applied to each opinion offered by Waller and Longo at trial.  The court expects the attorneys to prepare their witnesses and frame their questions in accordance with the standards and examples given above.  Both experts should be provided a copy of this order well in advance of trial so they take the stand fully cognizant of the limits imposed by the court on their testimony.  The court will closely "police" compliance with this order during trial to minimize the risk of either side presenting improper testimony to the jury.  In that regard, counsel must precisely frame questions when they get to the point of eliciting expert opinions.  Plaintiff's counsel must refer to what Waller's report labels as Opinions A–K (mindful plaintiff has withdrawn all of Opinions H and K, and paragraphs 2–4 of Opinion I).  Defense counsel likewise must make specific reference to paragraphs 266–280 of Longo's report.

Subject to something unexpected occurring at trial (such as the need to impeach an expert with a portion of his report), the court will exclude in whole the reports themselves

from admission as trial exhibits.[72]  The court finds that admitting the reports would confuse the jury.  The reports are rife with legal definitions and, as noted above, it will be the court's role to instruct the jury on the law.  Moreover, the reports reference plaintiffs and events that are not relevant to this particular case.  The reports also contain a summary of the facts as the experts understand them, but the court will ask the jury to only consider the facts that have been presented through evidence at the trial.

IT IS THEREFORE ORDERED that plaintiff's motion to allow Waller to testify as an expert at trial regarding generally accepted police practices and procedures is granted in part and denied in part.  Regardless of whether plaintiff ultimately decides to call Waller as an expert witness at trial, defendants may call Longo as an expert witness in this field.  As the court made clear at the October 3, 2016 hearing, plaintiff's motion opened the door to expert opinions on this topic.

Dated October 5, 2016, at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[72]*See Law v. Nat'l Collegiate Athletic Assoc.*, 185 F.R.D. 324, 342 (D. Kan. 1999) ("[A]n expert's written report is generally inadmissible.").