IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL MILLS,                           )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )        Case No. 14-2408-JPO
                                         )
UNIFIED GOVERNMENT OF WYANDOTTE,         )
COUNTY/KANSAS CITY, KANSAS, et al.,      )
                                         )
                    Defendants.          )

## ORDER IN LIMINE

This case arises from a January 4, 2011 sting operation in which the Kansas City,

Kansas Police Department ("KCKPD") sought to determine whether police officers on its

tactical squad ("the SCORE unit") were engaging in theft during the execution of search

warrants.  Plaintiff Michael Mills, a member of the SCORE unit at the time, was taken into

custody immediately following the sting operation.  He brings federal civil-rights claims and

state common-law claims for assault, battery, unlawful arrest and detention, and failure to

train and supervise.  A jury trial is scheduled to begin October 24, 2016.   Currently before

the court are the parties' motions in limine (ECF docs. 244 and 248).  As explained below,

plaintiff's motion is denied in all but one respect and defendants' motion is denied.[1]

---

[1]This limine order supplements the court's June 19, 2014 order adopting the parties'
stipulation to exclude evidence and argument related to ten specified categories.  ECF doc.
145 in Case No. 11-2699.

## I.      Governing Legal Standards

In ruling on motions in limine, the court applies the following standard:

> The movant has the burden of demonstrating that the evidence
> is inadmissible on any relevant ground.  The court may deny a
> motion in limine when it lacks the necessary specificity with
> respect to the evidence to be excluded.  At trial, the court may
> alter its limine ruling based on developments at trial or on its
> sound judicial discretion.  Denial of a motion in limine does not
> necessarily mean that all evidence contemplated by the motion
> will be admitted at trial.  Denial only means that the court
> cannot decide admissibility outside the context of trial.  A ruling
> in limine does not relieve a party from the responsibility of
> making objections, raising motions to strike or making formal
> offers of proof during the course of trial.[2]

## II.     Plaintiff's Motion in Limine (ECF doc. 244)

Plaintiff moves the court to preclude the introduction of evidence about (and reference

to) eight matters.[3]  As explained below, plaintiff's motion is denied, except as to topic No.

5 below.

1.      <u>Evidence of criminal acts not committed by plaintiff and evidence of alleged
criminal conduct developed after the January 4, 2011 arrest of SCORE officers</u>

Plaintiff first objects to the admission of evidence regarding the allegations of theft

that led to the execution of the sting operation.  He further objects to the admission of

---

[2]*BHC Dev., LC v. Bally Gaming, Inc.*, No. 12-2393, 2014 WL 524665, at *7 (D. Kan.
Feb. 10, 2014) (quoting *Schipper v. BNSF Ry. Co.*, No. 07-2249, 2009 WL 997149, at *1 (D.
Kan. Apr. 14, 2009) and *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1082
(D. Kan. 2000)).

[3]The court has combined the similar topics that plaintiff labeled No. 1 and No. 2 into
a single topic.

evidence regarding investigation of SCORE members after they were taken into custody on the day of the sting.  Plaintiff argues that such evidence is not relevant under Fed. R. Evid. 401 and, in any event, is unduly prejudicial under Fed. R. Evid. 403.  Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  As to prejudice, Rule 403 provides that although relevant, evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Under the Rule 401 relevancy standard, the court has little trouble finding that evidence of alleged criminal acts of the SCORE unit and the investigation into the same could shed light on facts material to the outcome of this litigation.  Evidence that the KCKPD received three complaints of theft in the course of the SCORE unit's execution of search warrants is highly relevant to the background of the sting operation, the manner in which the sting operation was executed and SCORE members were detained, and defendants' states of mind.  Similarly, the KCKPD's continuing investigation of criminal conduct by members of the SCORE unit developed after SCORE officers were taken into custody appears relevant to the reasons for defendants' actions on January 4, 2011.  Plaintiff's concern regarding the timing of such evidence goes to its weight, rather than its relevancy.  Although plaintiff's

relevancy objection may be revisited during trial, at this point the court is not convinced that the evidence should be excluded as not relevant.

Moreover, evidence of criminal conduct allegedly committed by members of the SCORE unit and the related investigation seems highly probative to the above issues in this case. Plaintiff asserts that such evidence may unfairly cast him in a poor light or confuse the jury because there is no evidence indicating he participated in or was aware of the thefts. But the court is certain that the jury will be able to distinguish plaintiff's actions from those of others, and that the danger of potential unfair prejudice or confusion is low. Particularly given the high probative value of this evidence, the court does not find plaintiff has met his burden under Rule 403 at this time.

The court will revisit this issue at trial upon any objection based on relevance or asserted prejudice to plaintiff. Defendants are warned that, particularly given the stipulation that the court will provide the jury regarding the events that led to the sting operation, the court expects evidence of the same to be limited and not unnecessarily inflammatory. Finally, if the court determines that plaintiff may suffer any potential unfair prejudice based on trial evidence, the court will likely give a jury instruction limiting the use for which the evidence may be considered. Plaintiff's motion in limine is denied as to evidence of criminal conduct.

2.      Prior internal-affairs investigations

Plaintiff asks the court to exclude evidence of two internal-affairs investigations concerning plaintiff's fatal shootings of two individuals on June 2, 2006, and August 18, 2010.  He asserts that the investigations are remote in time, making them not probative, and that facts related to the investigations not relevant to this case.  Plaintiff further asserts that evidence of past acts is inadmissible character evidence under Fed. R. Civ. P. 404.

The court disagrees that the prior investigations are too remote to be probative.  Both occurred within five years of the sting operation at issue here, with the second shooting occurring less than five months earlier.  The prior investigations show plaintiff's familiarity with internal investigations and are thus relevant to plaintiff's claim of unlawful detention.  Moreover, the incidents underlying the investigations and the resulting psychological effects on plaintiff are relevant to plaintiff's allegation of psychological trauma, and mental pain and suffering arising from the events of January 4, 2011.  Finally, defendants state that they will not offer this evidence as character evidence under Rule 404.  Because it is possible that this evidence may be relevant and admissible for reasons unrelated to plaintiff's character, plaintiff's motion on this point is denied without prejudice to plaintiff reasserting an objection at trial.

3.      Hearsay testimony

Plaintiff next objects to the admission at trial of documents that contain hearsay testimony.  Plaintiff does not list the specific documents he seeks to exclude, but mentions

broad categories of information, such as witness statements, police reports, e-mails, press releases, newspaper editorials, and correspondence.  Defendants agree that the court should exclude *inadmissible* hearsay, but note that some out-of-court statements are not classified as hearsay under Fed. R. Evid. 801–802, and others fall under exceptions to the hearsay rule listed in Fed. R. Evid. 803.  Defendants note, for example, that plaintiff has stipulated to the admission of certain documents that fall under the business-records exception of Rule 803(6).[4]  The court declines to address the applicability of the hearsay rule and its myriad exceptions in a vacuum, without the context of trial.  It would be premature to issue a blanket prohibition against, or blessing upon, the introduction of the broad categories of documents plaintiff mentions.  The court will entertain hearsay objections at trial.[5]

4.   Legal Opinions

Plaintiff seeks to exclude from evidence attorney testimony and correspondence that state legal opinions, asserting that all legal instruction should come from the court. Defendants respond that the testimony of Jerome Gorman, then Wyandotte County District Attorney, regarding his advice and guidance in the investigation leading to the sting and in the detention of the SCORE officers is directly relevant to defendants' states of mind, intent, and motive.  The court generally agrees with the positions of both sides.  It is certainly true

---

[4]*See* ECF doc. 210 at 13 (Amended Pretrial Order).

[5]Although making no definitive rulings now, the court notes that e-mails congratulating Chief Armstrong on the sting, as well as media coverage of the sting, appear to be hearsay not subject to an exception.

that the court's role at trial is to instruct the jury on applicable legal standards, and the court will inform the jury of this role and so instruct them.  But it is also true that the legal opinions Gorman gave defendants are relevant to defendants' states of mind, among other things.  The decision of whether to admit or deny a particular legal opinion cannot be made out of the context of trial because such a decision will be highly fact-specific.  Therefore, the motion on this point is denied without prejudice to plaintiff making a more specific objection at trial.

     5.    <u>Testimony from Dustin Sillings</u>

Plaintiff states that Dustin Sillings, a former SCORE officer who was ultimately indicted on federal criminal charges, asserted the Fifth Amendment privilege and refused to answer certain questions during his deposition in this case.  Plaintiff argues that if Sillings is permitted to testify at trial, plaintiff would be subjected to unfair surprise.  Defendants clarify that Sillings did answer questions about information contained in the statement he gave to the FBI and KCKPD, but concede that Sillings invoked the privilege in response to questions outside that statement.  The court therefore excludes testimony from Sillings as to any specific questions that he previously refused to answer during discovery.[6]

_____

[6]The court might reconsider this ruling, should either party request that Sillings's deposition be reopened now that he has pleaded guilty to the criminal charges and presumably is no longer in jeopardy of implicating himself.

6.    Mention of a *Miranda* or *Garrity* warning

Plaintiff seeks exclusion of any mention of whether plaintiff was given a warning under *Miranda v. Arizona*[7] or *Garrity v. New Jersey*.[8]   Plaintiff asserts that any discussion "of the legal significance between the two types of warnings would tend to confuse the jury," such that its probative value is outweighed by the danger of unfair prejudice.   Defendant counters that the distinction between the two types of warnings and the operative use of each for the different SCORE officers detained on January 4, 2011, is critical probative evidence in this matter.   The court agrees with defendants.   Four officers were given *Miranda* warnings, while six officers—including plaintiff—were given *Garrity* warnings via a "Witness Employee Rights" form.   Such evidence is highly relevant to defendants' theory that plaintiff freely consented to remaining at police headquarters until the early morning hours of January 5, 2011 (i.e., that plaintiff was not under arrest).   The distinction of when police typically give each type of warning is a simple concept that is unlikely to confuse the jury.   Given this evidence's high probative value and low potential to confuse the jury, this portion of plaintiff's motion is denied.

7.    Reports or testimony regarding the administration of or results from CVSA tests

Plaintiff moves to exclude  reports or testimony regarding the administration of or results from any computerized voice stress analysis ("CVSA") test—which the parties agree

---

[7]384 U.S. 436 (1966).

[8]385 U.S. 493 (1967).

is akin to a polygraph examination—given to a complainant or a witness. In response, defendants indicate that they will offer only evidence of a CVSA test administered to James Clayborn. Defendants state it will be offered solely to establish defendants' state of mind and intent to determine the reliability of the allegations which led to conducting the sting, and not for the truth of the matter asserted. As so limited by defendants, such evidence will be admitted.

Plaintiff correctly notes that the Tenth Circuit greatly circumscribes the use of polygraph evidence when it is "treated as scientific evidence" and offered as proof of truthfulness.[9] In such cases, an expert witness must be called to explain the science behind the testing. Defendants have not proffered an expert on this topic. However, in *United States v. Tenorio*, the Tenth Circuit recognized that "where polygraph evidence is not offered as scientific evidence, neither [Fed. R. Evid.] 702 nor a per se rule against admissibility applies."[10] In *Tenorio*, the Circuit held that evidence of a polygraph examination was properly admitted to explain a detective's actions (rather than as "an indicator of honesty"). Under *Tenorio*, the court will allow evidence of the CVSA test administered to Clayborn, but only for the purpose of establishing the reasons defendants conducted the sting operation and not for the truth of the results of the CVSA test.

---

[9]*United States v. Tenorio*, 809 F.3d 1126, 1130 (10th Cir. 2015) (citing *United States v. Hall*, 805 F.2d 1410, 1416–17 (10th Cir. 1986)).

[10]*Id.*

8.      Videotaped recordings made inside the sting house

Finally, plaintiff asks the court to exclude videotapes made in two rooms during the sting operation. Plaintiff is not seen on the videotapes. He argues that the videotapes are not relevant and that their probative value is outweighed by the danger of unfair prejudice to plaintiff. The court denies plaintiff's request. The court finds the videotapes highly relevant and probative. They go to the central question of the reasonableness of defendants' actions when the van carrying SCORE unit officers returned to KCKPD headquarters. They make a disputed fact—whether defendants had probable cause or reasonable suspicion to detain plaintiff—"more or less probable."[11] The court also finds that there is little danger that plaintiff will be unfairly prejudiced by admission of the videotapes. The jury is capable of distinguishing plaintiff's actions from those of other officers. The court's ruling, however, is without prejudice to plaintiff reasserting a Rule 403 objection at trial. Such an objection would be viewed favorably if, for example, defendants focus unnecessary attention on potentially inflammatory officer conduct that has little relevance to this case (such as officers viewing pornographic magazines).

**III.    Defendants' Motion in Limine (ECF doc. 248)**

Defendants move the court to exclude evidence or reference by counsel to twelve categories of information. Plaintiff has stipulated to nine of defendants' requests. To the extent plaintiff has not stipulated to defendants' requests, the motion is denied.

---

[11]Fed. Rule Evid. 401.

1.    <u>Physical injury or pain suffered by plaintiff</u>

Defendants first seek a ruling prohibiting plaintiff from introducing evidence about or referencing his physical pain or injury.  Defendants' request is based on a joint stipulation the parties entered and the court adopted (ECF doc. 145).  In the stipulation, the parties agreed that plaintiff was not seeking recovery for any physical pain or injuries, which instead were governed by plaintiff's workers-compensation claim.  They further agreed that the parties are prohibited at trial from presenting evidence about or referencing any physical injuries or pain plaintiff suffered, including any incurred as a result of being handcuffed.

Plaintiff acknowledges that he may not recover damages for physical injuries and states that he will not request an award of the same.  He further represents that neither plaintiff nor other SCORE officers will discuss their physical injuries and pain.  With these acknowledgments by plaintiff, which the court will hold him to at trial, defendants' first limine request is denied as moot.

So there is no confusion at trial, the court notes that it does not read the parties' earlier stipulation as prohibiting evidence regarding the objective facts surrounding the SCORE officers' arrests and detentions.  Thus, for example, while plaintiff may not testify he was in pain while handcuffed, he is not prohibited from mentioning the facts that he was handcuffed and kept in handcuffs for a certain period of time.  Such facts are not prohibited by the joint stipulation, and they are relevant to the manner in which plaintiff was detained and to his claim for punitive damages.

2.    Other SCORE officers' alleged psychological injuries

Defendants ask the court to exclude evidence of alleged psychological injuries suffered by witness SCORE officers (other than plaintiff).  Defendants assert that such evidence is irrelevant and that its probative value, if any, is substantially outweighed by unfair prejudice to defendants.  Defendants distinguish evidence of psychological injuries from the officers' "contemporaneous observations," which defendants concede "may be relevant."[12]

Plaintiff does not oppose defendants' request.  Plaintiff stipulates that "[n]o other SCORE officers will discuss their 'emotional distress' or other diagnosed 'psychological injuries,'" and "[n]o medical testimony of other SCORE officers' emotional distress or other medical diagnoses will be offered."[13]  Plaintiff asserts, however, that "SCORE officers should be allowed to discuss their experience in the parking garage and their experience while being detained."[14]  Defendants state in reply that they "do not seek exclusion of officer's testimony regarding their experience, only alleged psychological conditions, symptoms or related damages."[15]  The parties have thus reached an agreement on this point and this portion of defendants' motion is denied as moot.

---

[12]ECF doc. 249 at 2.

[13]ECF doc. 257 at 2–3.

[14]*Id.* at 2.

[15]ECF doc. 263 at 2.

3.      Witness officers' legal opinions or speculation

Defendants move to exclude testimony from non-expert witnesses "regarding whether SCORE Unit officers were under arrest or detained; what constitutes probable cause or reasonable suspicion; what constitutes an arrest or detention; constitutional rights."[16] Plaintiff stipulates that non-expert witnesses "will not be asked for lawyer-like definitions of these terms."[17]  But plaintiff asserts that officers' training on the issue of probable cause, officers' understanding of certain legal terms, and whether the Unified Government had policies and procedures to protect innocent persons from probable-cause-lacking arrests and detentions are pivotal issues in this case.

The court agrees with plaintiff that the involved officers' understandings of legal standards, such as "probable cause" and "reasonable suspicion," are relevant—not to the question of whether such standards were actually satisfied in this situation, but to other issues in the case.  For example, how officers acted based on their understanding of legal standards is relevant to the issue of malice/punitive damages; and the training officers received on these legal standards is pivotal to plaintiff's failure-to-train claim.  Thus, while the court will not permit officers to give expert-like opinion testimony based on hypothetical questions, the officers will be permitted to testify as to what each personally experienced and his reason for

---

[16]ECF doc. 249 at 2.

[17]ECF doc. 257 at 4.

taking certain actions (including that actions were based on his personal understanding of legal standards).

4.      Employment claims for violations of collective bargaining agreement

Plaintiff stipulates he will not present evidence of employment claims or damages.[18] This request is denied as moot.

5.      Allegations of unrelated misconduct by police commanders

Plaintiff stipulates he will not present evidence of unrelated misconduct by police commanders.  This request is denied as moot.

6.      Hearsay testimony and rumors with regard to COMSTAT meetings, roll calls, or in-service meetings

Plaintiff stipulates he will not present evidence of COMSTAT meetings, roll calls, or in-service meetings.  This request is denied as moot.

7.      Opinion testimony about Armstrong's reputation and honesty

Plaintiff stipulates he will not present evidence concerning defendant Armstrong's reputation as to honesty.  This request is denied as moot.

8.      Lay opinions regarding the causes of plaintiff's medical or psychological conditions

Defendants asks the court to exclude testimony from lay witnesses about the causes of plaintiff's medical or psychological conditions, arguing that only expert witnesses may

---

[18]Plaintiff does plan, however, to present evidence of the Memorandum of Understanding between the Unified Government and plaintiff's collective bargaining unit. Defendants take no issue with the introduction of such evidence.

give medical opinion testimony under Fed. R. Evid. 701–705. Plaintiff stipulates that he will not offer lay opinions of medical or psychological causation. Rather, plaintiff will limit his testimony and that of other lay witnesses to their personal knowledge about the differences in plaintiff's personality and behavior before and after January 4, 2011. With this stipulation, defendants' motion is denied. To be clear, though, plaintiff should not expect the court to permit testimony by lay witnesses about the "criteria for PTSD."[19]

9.   Reference to medical statements, comments, or opinions made to or by a witness to or by plaintiff's healthcare provider

Plaintiff stipulates he will not present evidence of statements made to or by a witness to or by plaintiff's healthcare provider. This request is denied as moot.

10.   Opinions of plaintiff's treating healthcare providers regarding information or records not in their possession during treatment

Defendants assert that because plaintiff's healthcare providers are non-retained experts who did not (and were not required to) produce expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B), their testimony must be limited to their personal knowledge gained in treating plaintiff and cannot extend to their opinions about records not in their possession at the time of treatment. Plaintiff responds that treating physicians may "rely upon and testify about hearsay information regularly relied up by experts in his or her field."[20] The court does not have enough information at this juncture, without the context of trial, to make a definitive

---

[19]ECF doc. 257 at 5.

[20]ECF doc. 257 at 6.

ruling excluding such treating-provider testimony.  This portion of defendants' motion is denied, without prejudice to defendants reasserting their objection at trial.

      11.    Plaintiff's *itemization of damages*

Plaintiff stipulates he will not show the jury the *itemization of damages* contained in the damages section of the amended pretrial order, but states he intends to use a demonstrative exhibit summarizing his damages.  Defendants reserve the right to object to plaintiff's use of a demonstrative exhibit.  To the extent that this request is not moot, the court will address any objection to a proposed demonstrative exhibit at trial.

      12.    Plaintiff's claim for punitive damages must be limited to the individual defendants and be based on actual malice

Plaintiff concedes he may only seek punitive damages from the individual defendants on his state common-law claims.  He does not dispute that evidence offered to support punitive damages should be evidence of actual malice.  This limine request is denied as moot.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.    Plaintiff's motion in limine (ECF doc. 244) is denied as to all but one topic.

2.    Defendants' motion in limine (ECF doc. 248) is denied.

3.    The limine conference previously set for October 20, 2016, is hereby converted to a status and case management conference to discuss details of the October 24, 2016 trial.

Dated October 14, 2016, at Kansas City, Kansas.

_s/ James P. O'Hara_

James P. O'Hara
U.S. Magistrate Judge